# UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

UNITED STATES OF AMERICA

v.

DALE RICHARDSON

FILED
J.N
MAR 1 8 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

UNDER SEAL
**CRIMINAL COMPLAINT**

CASE NUMBER: MAGISTRATE JUDGE KEYS
**08CR 228**

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about March 21, 2007, in Cook County, in the Northern District of Illinois, defendant(s)

did knowingly and intentionally distribute and possess with the intent to distribute a controlled substance, namely, in excess of 50 grams of mixtures containing cocaine base in the form of crack cocaine, a Schedule II Narcotic Drug Controlled Substance;

in violation of Title 21, United States Code, Section 841(a)(1).

I further state that I am a Special Agent for the Federal Bureau of Investigation and that this complaint is based on the following facts:

**See attached affidavit**

Continued on the attached sheet and made a part hereof:  __X__ Yes  ____ No

_____
Signature of Complainant

Sworn to before me and subscribed in my presence,

March 18, 2008                                at    Chicago, Illinois
Date                                                City and State

MAGISTRATE JUDGE ARLANDER KEYS          _____
Name & Title of Judicial Officer                Signature of Judicial Officer

STATE OF ILLINOIS      )
                       ) SS
COUNTY OF COOK         )

## AFFIDAVIT

I, Jason C. Rahoy, being first duly sworn on oath, depose and state as follows:

1.  I am a Special Agent of the Federal Bureau of Investigation ("FBI") and have been so employed since July 2006, and am presently assigned to the FBI's Joint Task Force on Gangs, Chicago Field Division. In this capacity, I have received specialized training in the enforcement of federal narcotics laws. My training and experience has involved, among other things, (a) the debriefing of defendants, witnesses, and informants, as well as others who have knowledge of the distribution and transportation of controlled substances and gang-related activity; (b) surveillance; and (c) analysis of documentary and physical evidence. I have also received training and have experience in investigations involving the interception of wire communications. Based on my training and experience as a FBI agent, I am familiar with the manner in which narcotics traffickers conduct their drug-related businesses, including the methods employed by narcotics traffickers to import and distribute narcotics, their use of telephones in furtherance of their illegal activities, and their use of coded language to refer to narcotics, drug proceeds, and other aspects of narcotics trafficking.

2.  I am responsible for investigating crimes that involve, among other things, the unlawful importation of illegal narcotics (21 U.S.C. §§ 952, 960 and 963), the possession

1

with the intent to distribute controlled substances and the distribution of controlled substances (21 U.S.C. §§ 841 and 846), the use of communication facilities to further these offenses (21 U.S.C. § 843(b)), as well as the related laundering of monetary instruments (18 U.S.C. §§ 1956 and 1957). In conducting these investigations, I have used a variety of investigative techniques and resources in several investigations which have included physical and electronic surveillance, monitoring court-authorized wiretaps, the use of confidential human sources ("CHSs") and informants, and securing other relevant information using other investigative techniques. Through these investigations, my training and experience and conversations with other Special Agents, as well as other law enforcement personnel, I have become familiar with methods used by narcotic traffickers to safeguard their narcotics, to distribute narcotics, and to collect and launder related narcotic proceeds.

3. The following information is based upon my personal participation in the investigation, training and experience, and information received from other law enforcement officers, local law enforcement officers, and a CHS who has proven reliable and provided information which has been independently corroborated. As a result of my participation in this investigation, I am familiar with all aspects of this investigation as described in this Affidavit. Since this Affidavit is being submitted for the limited purpose of establishing probable cause that DALE RICHARDSON violated 21 U.S.C. § 841(a)(1), it does not included each and every fact known to me concerning this investigation.

4. Based on the information contained in this Affidavit, I submit that there is

probable cause to believe that on March 21, 2007, DALE RICHARDSON knowingly and intentionally distributed and possessed with the intent to distribute a controlled substance, namely, in excess of 50 grams of mixtures containing cocaine base in the form of crack cocaine, in violation of Title 21, United States Code, Section 841(a)(1).

### The CHS

6. The CHS has been providing information to Special Agents of the Chicago Division of the FBI for the past year.[1] The CHS is a longstanding member of the Almighty Latin Kings Nation ("ALKN"). The information provided by the CHS has been independently corroborated through consensual telephonic recordings, body recordings, surveillance, and information provided by independent cooperating witnesses.

7. According to the CHS, RICHARDSON is a supplier of illegal narcotics to member(s) of the ALKN, and has supplied narcotics to the CHS on multiple prior occasions.

8. On March 29, 2007, CHS identified RICHARDSON from a CPD booking photograph.

---

[1] The CHS has been arrested 12 times for misdemeanor offenses and 3 times for felony offenses. CHS' arrests include domestic battery, battery, possession of illegal substances, distribution of illegal substances, criminal trespass, unlawful use of a weapon, and traffic offenses. The CHS has 1 felony conviction for delivery of cocaine. The CHS was arrested in early 2007 for possession of crack cocaine with intent to distribute. The CHS has been cooperating with law enforcement in an effort to gain a possible reduction in his/her sentence once charged. The CHS entered into the United States illegally and is a citizen of Belize. The CHS has received a Significant Public Benefit Parole (SPBP) so that his/her current immigration status here in the United States is legal. The FBI requested this status to enable the CHS to continue his/her cooperation with the FBI in its investigation.

## March 21, 2007, Telephone Calls

9.  On March 21, 2007, at approximately 10:20 a.m., at the direction of agents, CHS placed a consensually recorded telephone call to RICHARDSON[2] at telephone number (847) 293-8707. During this call, CHS asked RICHARDSON when could he/she see him. RICHARDSON responded later that afternoon. CHS suggested they meet at approximately 1:00 p.m. that afternoon. RICHARDSON replied that he would call CHS back when he woke up again.

10. At approximately 12:58 p.m., CHS received a consensually recorded telephone call from RICHARDSON, who was using telephone number (847) 293-8707. During this call, CHS asked RICHARDSON, "how long then?"[3] RICHARDSON asked CHS, "what [do you] want . . . want it fixed up (processed into crack cocaine) . . . ?" CHS replied, "fix it up for me . . . hard (processed into crack cocaine)." RICHARDSON told the CHS that he would call CHS when he was ready, around 2:00 p.m. or 3:00 p.m.

---

[2] The identification of DALE RICHARDSON in this Affidavit is based upon the following: First, CHS identified DALE RICHARDSON by voice subsequent to the consensual recordings. Second, during recorded conversations CHS referred to DALE RICHARDSON as "DALE," (agents originally thought CHS was referring to "DELL" due to CHS' accent). Third, during particular recorded calls, RICHARDSON arranged to personally meet with CHS and that meeting was surveilled by law enforcement. Finally, the voice in the telephone calls was identified by agents as the voice in the body recording of the controlled drug purchase.

[3] The recorded conversations throughout this Affidavit have been summarized, and parentheses have been placed around language that represent my or other agents' understanding of what is being said during the recordings, based on the contents and context of the conversations, my experience as a law enforcement officer, and the experience of other law enforcement officers in this investigation. In addition, language that is quoted from the recorded conversations throughout this Affidavit is based upon agents' review of the recorded conversations. Quoted material is not intended to be a final transcription of the audio recordings from which the quotes are taken.

4

11. At approximately 2:50 p.m., CHS received a telephone call from RICHARDSON using telephone number (847) 293-8707. This call was received in the presence of agents, but not recorded. According to CHS, RICHARDSON asked CHS during this call if he/she wanted "three," understood by CHS from prior narcotics transactions with RICHARDSON to mean three packages, each containing three ounces of crack cocaine. CHS told RICHARDSON that he/she wanted "one," which CHS understood from prior narcotics transactions with RICHARDSON as one package containing three ounces of crack cocaine.

12. At approximately 2:54 p.m., CHS placed a consensually recorded telephone call to RICHARDSON at telephone number (847) 293-8707. During this call, CHS told RICHARDSON, "make sure [it] come[s] to three (ounces of crack cocaine) . . . ." RICHARDSON responded, "that's what I was asking you." CHS asked how long it would take, and RICHARDSON responded that it would be less than 20 minutes.

13. At approximately 3:14 p.m., CHS received a call from RICHARDSON. This call was consensually recorded. During this call, RICHARDSON asked CHS where he/she was, and then told CHS to call him when he/she was in the vicinity of Touhy and Western.

### March 21, 2007, Narcotics Transaction

14. At approximately 3:14 p.m., agents provided CHS with $1,800 in United States Currency (USC) to purchase three ounces of crack cocaine from RICHARDSON. Agents searched CHS and CHS's vehicle for narcotics, weapons and unaccounted for money with

negative results. Agents then provided CHS with a concealed audio recording device and transmitter.

15. At approximately 3:20 p.m., CHS began driving to the vicinity of the intersection of West Touhy Avenue and North Western Avenue, Chicago, Illinois. Surveillance agents ("surveillance") observed CHS continuously while en route to this location.

16. At approximately 3:24 p.m., surveillance observed a maroon Chevrolet van, Illinois license plate # 860-8795, parked in the middle of the 7200 block of North Hamilton Avenue. Illinois license plate # 860-8795 is registered to DALE RICHARDSON, 1718 Dodge, Evanston, Illinois.

17. At approximately 3:27 p.m., surveillance observed CHS arrive in the vicinity of 7200 North Hamilton Avenue. At this time, according to CHS, CHS received a telephone call from RICHARDSON who told CHS to follow him. Agents observed the maroon Chevrolet van depart, and CHS followed the van northbound on Hamilton Avenue.

18. At approximately 3:31 p.m., surveillance observed the maroon van and the vehicle being driven by the CHS pull over at 315 Asbury Avenue, Evanston, Illinois. CHS exited his/her vehicle and entered the maroon van.

19. According to CHS, while inside the maroon van, he/she gave RICHARDSON $1,800 and RICHARDSON handed CHS a plastic bag. RICHARDSON started to count the money, but stopped when he believed that he saw a "narc" police car and drove off with the

CHS still in the van.

20. At approximately 3:32 p.m., surveillance observed the maroon van travel north on Asbury Avenue.

21. At approximately 3:41 p.m., surveillance observed the maroon van stop at the intersection of Church and Wesley, Evanston, Illinois. At approximately 3:42 p.m., surveillance observed CHS exit the maroon van. According to CHS and consistent with the consensual recording, he/she then hailed a taxi cab and proceeded in the taxicab back to the area where CHS parked his/her vehicle.

22. At this time, surveillance also observed the maroon van depart from the location, now occupied only by RICHARDSON. At approximately 3:44 p.m., surveillance observed the maroon van pull into a parking spot in front of the United States Post Office located at 1101 Davis Street, Evanston, Illinois. RICHARDSON exited the maroon van and entered the Post Office. Agents subsequently identified RICHARDSON through a law enforcement booking photograph.

23. At approximately 4:08 p.m., agents met CHS at 315 Asbury, where he/she had parked his/her car prior to entering RICHARDSON's van. CHS provided to agents one black plastic bag containing a paper towel wrapped around a smaller clear, plastic baggie containing a yellowish, rocky substance with the odor and appearance of crack cocaine. Agents again searched CHS and CHS's vehicle for contraband and unaccounted for money with negative results.

24. The substance provided to the CHS by RICHARDSON was subsequently transported to the Drug Enforcement Administration laboratory where it tested positive for cocaine base, and was found to weigh 89.5 grams.

Based on the foregoing, I believe there is probable cause that on March 21, 2007, DALE RICHARDSON knowingly and intentionally distributed and possessed with the intent to distribute a controlled substance, namely, in excess of 50 grams of mixtures containing cocaine base in the form of crack cocaine, in violation of Title 21, United States Code, Section 841(a)(1).

FURTHER AFFIANT SAYETH NOT.

Jason C. Kahoy, Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me this 18th day of March, 2008.

ARLANDER KEYS
MAGISTRATE JUDGE

8